IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| RONALD ERIC CAUSEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security )<br>Administration, )<br>)<br>Defendant. ) | CV 315-036 |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Ronald E. Causey appeals the decision of the Acting Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I.    BACKGROUND**

Plaintiff is a fifty year old male with an eighth grade education, a history of polysubstance abuse, and past relevant work experience as a forklift operator and loader. Tr. ("R."), pp. 45, 58-60, 70-72, 184. Plaintiff applied for DIB and SSI on August 10, 2010, alleging a disability onset date of February 24, 2010. R. 184-90, 191-94, 220. The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. 119-22, 123-36.

The ALJ held a hearing on March 25, 2013, and heard testimony from Plaintiff, who was represented by counsel, as well as from G. Mark Leaptrot, a Vocational Expert ("VE"). R. 37-84. On May 2, 2013, the ALJ issued an unfavorable decision. R. 92-101.

Applying the five-step sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since February 24, 2010, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*, and 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative disc disease of the lumbosacral spine and of the cervical spine at C4-6; polysubstance abuse; and low average to borderline intellectual functioning (20 C.F.R. § 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). He should never be required to climb ladders, ropes, or scaffolds. The claimant can individually sit, stand, and walk, for at least six of eight hours each eight-hour workday. He can lift/carry 20 pounds occasionally, up to 1/3 of an eight hour workday, and 10 pounds frequently, up to 2/3 of an eight-hour workday. The claimant can individually push and pull arm/hand controls, operate foot/leg controls, climb ramps/stairs, stoop, kneel, crouch, and crawl for no more than 1/3 of an eight-hour workday. Finally he should avoid concentrated exposure to extreme vibrations that might exacerbate his neck and low back pain and hazardous work environments.

5. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. § 404.1569, 404.1569(a) 416.969 and 416.969(a)). The claimant has not been under a disability, as defined in the Social Security Act, from February 24, 2010, through the date of this decision (20 C.F.R. § 404.1520(g) and 416.920(g)).

R. 92-101.

Plaintiff then requested that the Appeals Council ("AC") review the ALJ's decision. R. 35-36. The AC granted Plaintiff's request and issued a decision finding Plaintiff not disabled. R. 4-9. The AC determined Plaintiff did not meet Listing 12.05(C) because Plaintiff was diagnosed with borderline intellectual functioning rather than intellectual disability, and because Plaintiff did not have deficits in adaptive functioning. R. 4. In place of the ALJ's RFC finding, the AC adopted the hypothetical question the ALJ posed to the VE at the hearing. R. 5-6. In reviewing the entire record, the AC concluded:

1. The claimant met the special earnings requirements of the Act on February 24, 2010, the date the claimant stated he became unable to work, and met them through December 31, 2011, the claimant's date last insured. The claimant has not engaged in substantial gainful activity since February 24, 2010.

2. The claimant has the following severe impairments: degenerative disk disease of the lumbosacral spine and of the cervical spine at C4-6, polysubstance abuse, and low average to borderline intellectual functioning, but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

3. The claimant's combination of impairments results in the following limitations on his ability to perform work-related activities: the claimant is limited to performing light exertional work activities. The claimant should never be required to climb ladders, ropes, or scaffolds. The claimant can individually sit, stand, and walk, for at least six of eight hours each eight-hour workday. He can lift/carry 20 pounds occasionally, up to 1/3 of an eight hour workday, and 10 pounds frequently, up to 2/3 of an eight-hour workday. The claimant can individually push and pull arm/hand controls, operate foot/leg controls, climb ramps/stairs, stoop, kneel, crouch, and crawl for no more than 1/3 of an eight-hour workday. The claimant should avoid concentrated exposure to extreme vibrations that might exacerbate the claimant's neck and low back pain and hazardous work environments. The claimant is limited to performing work activities with a specific vocational preparation of 1 to 3 and social interaction with the public, supervisors and coworkers should be limited to no more than 1/3 of an eight-hour workday although the claimant can work in close proximity with them throughout the entire workday. The claimant is better off working with objects rather than people. The claimant should avoid fast-paced work activities or frequent work setting changes. In view of the above limitations, the claimant has the residual functional capacity to perform a reduced range of the light exertional level.

4. The claimant's subjective complaints are not fully credible for the reasons identified in the body of this decision.

5. The claimant is unable to perform past relevant work as a forklift operator and loader because this past relevant work was performed at the medium or heavy exertional level, which exceeds the residual functional capacity limitations to reduced light work.

6. The claimant is 47 years old, which is defined as a younger individual and has a limited or less education. The claimant's past relevant work is semiskilled or skilled. The claimant has no skills that are transferable to skilled or semiskilled occupations within his residual functional capacity.

7. If the claimant had the capacity to perform the full range of the light exertional level, 20 CFR 404.1569 and 416.969 and Rule 202.18, Table No. 2 of 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of not disabled. Although the claimant's exertional and nonexertional impairments do not allow him to perform the full range of the light exertional level, using the above-cited Rule as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. The vocational expert identified the following three occupations in his testimony that the claimant could still perform: Egg Washing Machine Attendant (Dictionary of Occupational Titles (DOT) #529.686-030; light exertional level and unskilled, Specific Vocational Preparation (SVP) level 1) , Garment Sorter (DOT #222.687-014; light exertional level and unskilled, SVP level 2), and Box Sealer Inspector (DOT #641.687-014; light exertional level and unskilled, SVP level 2) (Testimony from 12:01:42 PM to 12:04:28 PM). The vocational expert testified that for Egg Washing Machine Attendant there were 5,500 jobs in the local economy of the State of Georgia and 433,000 jobs existing in the national economy, for Garment Sorter there were 6,400 jobs in the local economy of the State of Georgia and 280,000 jobs existing in the national economy, and for Box Sealer Inspector there were 5,600 jobs in the local economy of the State of Georgia and 400,000 jobs existing in the national economy (Testimony from 12:02:29 PM to 12:04:16 PM).

8. The claimant is not disabled as defined in the Social Security Act at any time through May 2, 2013, the date of the hearing decision.

R. 4-8.

The AC's final decision is now ripe for judicial review. 42 U.S.C. § 405(g); 42 U.S.C. § 1383. Plaintiff argues the ALJ erred (1) in failing to consider whether Plaintiff met Listing 12.05(C) and (2) in finding Plaintiff could perform work in the national economy. (See doc.

no. 12, "Pl.'s Br.," pp. 12-16.) The Commissioner maintains Plaintiff did not meet his burden of proving his impairments met Listing 12.05(C), and substantial evidence supports the AC's determination Plaintiff could perform work in the national economy. (See doc. no. 14, "Comm'r's Br.," pp. 4-13.)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of

fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff claims the ALJ erred by failing to consider whether Plaintiff met Listing 12.05(C), and failed to discuss Plaintiff's IQ score of sixty-three. (Pl.'s Br., pp. 13-14.) Furthermore, Plaintiff argues the VE was presented with an incomplete hypothetical that did not incorporate Plaintiff's moderate difficulties with maintaining concentration, persistence, and pace, did not account for Plaintiff's need for special guidance and supervision, and did not include consultative examiner Dr. Hutchings' findings of additional impairments. (See Pl.'s Br. 17-19.)

### A. The Requirements for Satisfying Listing 12.05(C) at Step Three of the Sequential Evaluation Process.

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity.

6

Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that his condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In order to show that his impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this general diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. §12.00A; see also Perkins v. Comm'r, Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). Thus, "a claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive functioning, as well as satisfying one of the additional criteria, to prove entitlement to disability benefits under Listing 12.05." Jordan v. Comm'r of Soc. Sec. Admin., 470 F. App'x 766, 768 (11th Cir. 2012). The regulations give several examples of adaptive activities, including: "cleaning, shopping, cooking, taking public

7

transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00C(1).

Listing 12.05(C) states: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. § 12.05(C). Thus, a claimant generally meets the Listing 12.05(C) criteria when he, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); see also Perkins, 553 F. App'x at 873 (requiring a showing for Listing 12.05(C) claim that individual meets the Listing 12.05 diagnostic criteria, including deficits in adaptive function, along with onset before age twenty-two, a qualifying IQ score, and the requisite deficits in work related functioning). However, "a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery, 979 F.2d at 837; see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (low IQ scores give rise to presumption of intellectual disability, but such presumption may be rebutted with evidence of daily activities that are inconsistent with diagnosis of intellectual disability); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) ("[IQ] test results must be examined to assure consistency with daily activities and behavior").

### B. Plaintiff Cannot Meet Listing 12.05 Because He Does Not Have Deficits in Adaptive Functioning.

Plaintiff's first argument is that the ALJ needed to explicitly discuss Listing 12.05(C) at step three. (Pl.'s Br. 14.) The Eleventh Circuit has routinely upheld an ALJ's implicit finding that a claimant did not meet Listing 12.05. See, e.g., Gray ex rel. Whymss v. Comm'r of Soc. Sec., 454 F. App'x 748, 750 (11th Cir. 2011) (upholding ALJ's implicit finding claimant did not meet Listing 112.05D). "There is no requirement the ALJ mechanically recite the evidence leading to his ultimate determination. A finding that a claimant's impairments are not contained in the Listing may be implied from the ALJ's decision." Id.

Here, although the ALJ did not explicitly discuss Plaintiff's IQ score of sixty-three or whether Plaintiff met 12.05(C), the ALJ implicitly determined Plaintiff did not meet the listing, by citing Plaintiff's daily activities and behavior. At the hearing, Plaintiff self-reported that he cooks his own meals and is able to use a microwave. R. 65. At step three, the ALJ determined Plaintiff organizes his own schedules, prepares his own meals, organizes and performs his own shopping, and can follow simple tasks as he had done throughout his nineteen years of employment. R. 96. The ALJ also noted Plaintiff was independent in activities of daily living, could ride a bike, use public transportation, and drove an automobile until he lost his license because of a DUI conviction. R. 97. Thus, the ALJ implicitly determined Plaintiff did not meet Listing 12.05(C) because he lacked deficits in adaptive functioning.[1]  This determination is supported by the substantial evidence listed above.

---

[1] Plaintiff also argues deficits in adaptive functioning should correspond with the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"). See generally Pl.'s Br. 12. However, the ALJ is not required to follow the guidelines set forth in the DSM-IV when

9

Regardless, when reviewing the ALJ's decision, the AC explicitly addressed Plaintiff's IQ score of sixty-three and found Plaintiff did not meet Listing 12.05(C) because consultative examiner Dr. John C. Whitley diagnosed Plaintiff with borderline intellectual functioning. R. 4. A diagnosis of borderline intellectual functioning "is mutually exclusive of [intellectual disability]." Jordan, 470 F. App'x at 768-69. Furthermore, the AC explicitly noted Plaintiff did not display deficits in adaptive functioning necessary to meet Listing 12.05(C), citing Dr. Whitley's findings. R. 4.

Dr. Whitley's opinion strongly suggests Plaintiff does not have deficits in adaptive functioning. Although Dr. Whitley determined Plaintiff had an IQ of sixty-three, Dr. Whitley diagnosed Plaintiff with borderline intellectual functioning. R. 364. Dr. Whitley found Plaintiff was capable of understanding and following simple work tasks, was able to interact with coworkers and supervisors, was able to organize his own schedule, prepare his own meals, perform his own shopping, could drive an automobile, could clean and organize a living space, and was capable of managing his own personal finances. Id. Dr. Whitley noted Plaintiff was adequately dressed, was clean, answered questions in full sentences, had intact concentration and memory, and had thought processing that was coherent, lucid, and rational. R. 362. Dr. Whitley further noted Plaintiff typically arises at 11:00 a.m., makes breakfast, dresses, goes out to seek employment, and returns to watch three to four hours of television. Id.

---

determining deficits in adaptive functioning. McGirt v. Colvin, CV 314-038, 2015 WL 5003667, at *1, 5 (S.D. Ga. Aug. 21, 2015). Because Plaintiff must satisfy all of the specified criteria in the Social Security regulations to meet Listing 12.05(C), whether he satisfies the DSM-IV criteria for intellectual disability is not dispositive. See Sullivan, 493 U.S. at 530.

In sum, substantial evidence supports the ALJ and the AC's finding, based on an extensive review of the record, that Plaintiff did not satisfy Listing 12.05(C), despite the existence of a full-scale IQ score of sixty-three. As current deficits in adaptive functioning are an additional requirement alongside a valid IQ score in the necessary range, Plaintiff's arguments fail to rebut the ALJ and AC's finding, based on substantial evidence, that he does not satisfy the requirements of Listing 12.05(C). See Perkins, 553 F. App'x at 873 (affirming ALJ's conclusion that plaintiff did not meet Listing 12.05(C) despite IQ in required range due to plaintiff's work experience and daily living activities); Harris v. Comm'r of Soc. Sec., 330 F. App'x 813, 815 (11th Cir. 2009) (finding substantial evidence claimant did not meet Listing 12.05(C), where he "was never diagnosed with mental retardation, only borderline intellectual functioning" and ability for self-care, managing money, and communicating effectively with others ruled out deficits in adaptive functioning necessary to meet Listing); Davis v. Astrue, Civ. Act. No. 2:07cv880, 2008 WL 2939523, at *3 (N.D. Ala. July 25, 2008) (relying on medical opinion that adaptive behavior may elevate claimant with IQ scores in mild range of intellectual disability to borderline intellectual functioning that does not satisfy Listing 12.05(C)).

### C. The ALJ Did Not Err in Finding Plaintiff Can Perform Work in the National Economy.

Plaintiff argues the hypothetical presented to the VE was incomplete because it did not explicitly include the functional limitation of a person having moderate difficulties in maintaining concentration, persistence, and pace, Plaintiff's need for "special guidance and supervision," and all of Plaintiff's limitations from Dr. William Hutchings' examination. (Pl.'s Br. 16-19.) The underlying assumptions of the hypothetical questions posed to the VE must

accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.")  However, a hypothetical question need not incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Crawford, 363 F.3d at 1161.

First, Plaintiff cites Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011), arguing the hypothetical presented to the VE was required to explicitly include the functional limitation of a person having moderate difficulties in maintaining concentration, persistence, and pace. (Id.)  However, the Eleventh Circuit has clarified that "limiting hypothetical questions to include only unskilled work sufficiently accounts for the claimant's limitations in maintaining his concentration, persistence, and pace where the medical evidence demonstrates that the claimant can engage in simple, routine tasks or unskilled work despite his limitations." Jacobs v. Comm'r of Soc. Sec., 520 F. App'x 948, 950-51 (11th Cir. 2013); see also Timmons v. Comm'r of Soc. Sec., 522 F. App'x 897, 907 (11th Cir. 2013) ("An ALJ's hypothetical question restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence, and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite limitations in concentration persistence and pace.")

Here, the ALJ's hypothetical question adequately accounted for Plaintiff's moderate limitations in concentration, persistence, and pace. In his hypothetical, the ALJ asked the VE to

assume an individual had a limited eighth grade education, with low-average intelligence to borderline intellectual functioning that limited him performing work activities with SVP levels one to three. R. 71-72. Furthermore, the ALJ also asked the VE to assume the individual would need to avoid fast-paced work activities or frequent work setting changes. R. 72. The VE determined that such an individual could not perform any of Plaintiff's past work activities as either a forklift operator or a loader, but identified three jobs of egg washing machine attendant, garment sorter, and box sealer inspector that Plaintiff was capable of performing. R. 73.

As explained in detail *supra*, despite moderate limitations in maintaining concentration, persistence, and pace, Dr. Whitely found Plaintiff could: (1) organize his own schedules; (2) perform his own shopping; (3) prepare his own meals; (4) and understand and follow simple work tasks as he has done for nineteen years. In light of this supporting medical evidence, the ALJ's restriction to unskilled work with a specific vocational preparation between one and three sufficiently accounted for Plaintiff's limitations in concentration, persistence, and pace. See Timmons, 522 F. App'x at 907. Accordingly, the ALJ was not required to explicitly include the functional limitation of a person having moderate difficulties in maintaining concentration, persistence, and pace in the hypothetical.

Next, Plaintiff argues the ALJ erred because the VE testified that Plaintiff's past work as a forklift operator and a loader were not performed in a typical fashion as contemplated by the DOT. (Pl.'s Br. 17.) Specifically, Plaintiff asserts he needed "special guidance and supervision" while working his past jobs which was not accounted for by the ALJ. (Id.) Here, the VE testified that Plaintiff was unable to perform his past employment as both a forklift operator and a loader. R. 72. The VE noted that both forklift operator and loader were semi-skilled jobs with SVP levels of three. R. 70. Yet, all of the jobs the VE identified Plaintiff could perform were

13

light, unskilled, with SVP levels ranging from one to two. For example, the VE determined Plaintiff could work as an egg washing machine attendant, a light, unskilled job with a SVP level of one. R. 73. Because there is no indication Plaintiff is incapable of performing these jobs, or that special guidance and supervision would be required for these jobs, Plaintiff's argument provides no basis for remand. The ALJ's hypothetical fairly accounted for Plaintiff's mental and physical limitations.

Finally, Plaintiff argues the hypothetical was improper because it did not include Dr. Hutchings' findings of additional impairments. Specifically, Plaintiff argues the ALJ did not include Dr. Hutchings' findings that Plaintiff was precluded from (1) work tasks that entail literacy; (2) standing at one time for ten to twenty minutes; (3) sitting for five to ten minutes before getting up and moving around; (4) walking for more than fifteen minutes; and (5) squatting or bending at the waist to lift. R. 78. When Plaintiff presented these additional limitations, the VE indicated the additional impairments would rule out gainful employment, assuming Plaintiff was employed at jobs where literacy was precluded. R. 79. As explained below, the ALJ's omission of Dr. Hutchings' findings does not change the administrative result.

First, Plaintiff misinterprets Dr. Hutchings' findings. Specifically, in addition to the impairments, Dr. Hutchings also found Plaintiff could "handle simple math, *read simple instructions*, perform simple manual tasks, perform fine manipulation, [and] perform repetitive tasks with the hands for short periods." R. 498 (emphasis added). Nowhere does Dr. Hutchings preclude Plaintiff from work tasks entailing literacy. See R. 490-498. The VE testified the additional limitations precluded Plaintiff from gainful employment only if it was presumed Plaintiff was limited to jobs not requiring literacy. R. 79.

Secondly, the ALJ explicitly assigned no value to Dr. Hutchings' findings because "the objective medical findings totally contradict his physical capacities assessment and those of the prior internal medicine doctor who found minimal neurological deficits that is consistent with other evidence of record." R. 99. Indeed, as a one-time consultative examiner, Dr. Hutchings' opinion was not entitled to great weight and was properly discredited by other evidence in the record. Crawford, 363 F.3d at 1161. Accordingly, the ALJ's hypothetical was not required to incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Id. The record reflects that the ALJ presented characteristics matching those of Plaintiff, as supported by substantial evidence in the record, namely, exertional and non-exertional limitations encompassing lifting, walking, sitting, pushing, pulling, crawling, stooping, kneeling, crouching, and exposure to hazardous work environments. The ALJ's hypothetical fairly and adequately set out all of Plaintiff's credible impairments.

In sum, because the hypothetical presented to the VE accurately and comprehensively reflected Plaintiff's characteristics, the ALJ and AC's reliance on the VE testimony was proper. See McSwain, 814 F.2d at 619-20; Pendley, 767 F.2d at 1562-63. Therefore the ALJ's conclusion that there is work Plaintiff can perform in the national economy is supported by substantial evidence, and this issue forms no basis for remand.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a

final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 26th day of May, 2016, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA